RECEIVED SEP 27 2019
U.S. DISTRICT COURT
ABERDEEN, SD

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
NORTHERN DIVISION

| | |
|---|---|
| JANE DOE, INDIVIDUALLY AND ON BEHALF OF THEIR MINOR CHILD, A.A.; JOHN DOE, INDIVIDUALLY AND ON BEHALF OF THEIR MINOR CHILD, A.A.; JESSICA DOE, INDIVIDUALLY AND ON BEHALF OF THEIR MINOR CHILD, B.B.; JAMES DOE, INDIVIDUALLY AND ON BEHALF OF THEIR MINOR CHILD, B.B.; JILL DOE, INDIVIDUALLY AND ON BEHALF OF THEIR MINOR CHILD, C.C.; AND JEFF DOE, INDIVIDUALLY AND ON BEHALF OF THEIR MINOR CHILD, C.C.;<br><br>Plaintiffs,<br><br>vs.<br><br>ABERDEEN SCHOOL DISTRICT, BECKY GUFFIN, IN HER INDIVIDUAL AND OFFICIAL CAPACITY; CAMILLE KAUL, IN HER INDIVIDUAL AND OFFICIAL CAPACITY; RENAE RAUSCH, IN HER INDIVIDUAL AND OFFICIAL CAPACITY; COLLEEN MURLEY, IN HER INDIVIDUAL AND OFFICIAL CAPACITY; MICHAEL NEUBERT, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY; CARRIE WIESENBURGER, IN HER INDIVIDUAL AND OFFICIAL CAPACITY; AND DOES 1-2,<br><br>Defendants. | 1:18-CV-01025-CBK<br><br><br><br><br><br><br><br><br><br><br>MEMORANDUM AND ORDER |

This matter is before the Court on defendants Aberdeen School District and Carrie Wiesenburger's (collectively "defendants") motions to dismiss plaintiffs' claims under

the United States Constitution, via 42 U.S.C § 1983, the Americans with Disabilities Act (ADA), 42 U.S.C. §§12101, *et seq.*, the Rehabilitation Act, 29 U.S.C. §§ 794, *et seq*, the South Dakota Human Rights Act (SDHRA), SDLC Chapter 20, § 13, and negligence under South Dakota law, the claim being that there is a lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). Docs. 23 and 26.

## BACKGROUND

The alleged events giving rise to this action transpired over the course of two years, while plaintiffs' minor children were students at May Overby Elementary ("May Overby") in Aberdeen, SD. Doc. 1 at 2. May Overby is a South Dakota public school and is part of the Aberdeen School District ("ASD"). Id. at 6. Plaintiffs' minor children are all students with disabilities that require special care. Throughout all relevant times, each minor child has had an individualized education program ("IEP") as required by State and Federal law. Doc. 24 at 10-11. While in school at May Overby, each minor child was taught by defendant Wiesenburger.

Plaintiffs Jane and John Doe's minor child, A.A., has been diagnosed with autism spectrum disorder and moderate cognitive disability. Doc. 1 at 7. Plaintiffs allege that A.A. was the regular subject of physical and emotional abuse at the hands of defendant Wiesenburger and her education aides. Id. at 8-9. It is contended that A.A. was confined to a separate room "without food, water, or a restroom break 274 times between October 26, 2015 – March 1, 2016." Id. at 9. Plaintiffs allege that when A.A. was being removed to this separate room, defendant Wiesenburger or one of her aides would "push[], shove[], and drag[]" her into the room. Id. Plaintiffs further allege that the door to the separate room would be held shut by defendant Wiesenburger or her aides if A.A. tried to leave and that, while inside this separate room, A.A. was denied access to "lunch, water, and any educational inclusion or activities." Id. at 9-10.

Plaintiffs assert that "on September 3, 2014, Jane Doe went to the YMCA pool to observe A.A. during her swim class . . . Jane Doe saw an education aide" put her face very close to A.A.'s, and that "A.A. cowered from the aide." Doc. 1 at 8.

Plaintiffs Jessica and James Doe's minor child, B.B., has been diagnosed with "autism, attention deficit hyperactivity disorder, and chronic anxiety." Doc. 1 at 13. Plaintiffs contend that B.B was the subject of regular physical and emotional abuse at the hands of defendant Wiesenburger and her education aides. Id. at 14-5. Plaintiffs allege that B.B. was "routinely dragged, shoved, pushed, pulled, and carried crying out of the classroom" by defendant Weisenburger or her aides when he did not want to participate in gym class. Id. at 15. Plaintiffs also allege that, as a means of discipline, B.B. would be "barricaded up against the wall in the anteroom [to the classroom] with a partition" by defendant Weisenburger or her aides. Id.

Plaintiffs further allege that defendant Wiesenburger and her aides would force B.B. to swim by pulling his fingers loose from the pool's edge and forcing him into the middle of the pool. Id. at 14. Plaintiffs allege that this was done while B.B. was without a "floatation vest" and that it would leave him "shaken and upset." Id. at 15.

Plaintiffs Jill and Jeff Doe's minor child, C.C., has been diagnosed with mild to moderate inner ear hearing loss and is non-verbal, utilizing American Sign Language and hearing aids to communicate. Doc. 1 at 16. Plaintiffs claim that C.C. was regularly subjected to physical and emotional abuse at the hands of defendant Wiesenburger and her education aides. Id. at 17-8. Plaintiffs claim that defendant Wiesenburger and her aides would force C.C. up against the wall of the anteroom to the classroom with large mats, they would use their weight against the mats to hold C.C. in place and prevent him from leaving the anteroom. Id. at 18. Plaintiffs claim that these mats were used for disciplinary purposes, and that C.C. was often kept shut into the anteroom by mats for long periods of time. Id.

Plaintiffs also allege that in August, 2016, defendant Wiesenburger and her aides "forcibly strip[ed]" C.C. in order to get him into a bathing suit. Doc. 1 at 17. Plaintiffs allege that C.C. was upset and refused to get into the swimming pool, in response to which, an aide approached C.C. from behind and physically pushed him into the pool. Id.

3

Plaintiffs further allege that all three child plaintiffs observed defendant Wiesenburger engage in abusive conduct and use denigrating and abusive language directed toward other disabled children in the class, which caused them further emotional distress. Id. at 20-1. Plaintiffs also allege that defendant Wiesenburger kept her disabled students segregated from the rest of the class and regularly denied them access to educational instruction and class materials. Id. at 22.

## ARGUMENTS

Defendants contend in their motion to dismiss for lack of jurisdiction that the gravamen of plaintiffs' lawsuit is a dissatisfaction with the education programs of these special education students. Doc. 24 at 1. Defendants' argument asserts that because plaintiffs are essentially seeking a remedy for their children's denial of a free appropriate public education ("FAPE"), they must exhaust all administrative remedies under the Individuals with Disabilities Education Act (IDEA) before prosecuting a case in the courts. Id. at 2. Defendants argue that the requirement of exhaustion under the IDEA is jurisdictional in nature and, as plaintiffs have failed to exhaust their administrative remedies, this court is deprived of subject matter jurisdiction and should dismiss plaintiffs' complaint. Id. at 3. Defendants assert that all of plaintiffs' claims arise from aspects of the education of disabled students and, thus, concerns whether those students have received a FAPE. Id. at 21. Additional, but related, arguments state that plaintiffs' claims are for a denial of a FAPE because the complaint repeatedly references the overuse of restraint and seclusion procedures, which has been found to be a denial of a FAPE in previous cases. Id. at 19-20. Defendants also claim that plaintiffs allege no common law torts as the foundation of any non-educational injuries. Id. And finally, defendants claim that the locus of each allegation is in the educational setting and relates to the students' disabilities. Id.

For their part, plaintiffs respond that the gravamen of their complaint is the past physical and emotional injuries they claim their minor children suffered at the hands of defendant Wiesenburger and her education aides. Doc. 28 at 2. Plaintiffs contend that

these alleged physical and emotional injuries must be "disentangle[ed]" from the "educational setting." Id. Plaintiffs further argue that there has been no conflict between the parties as to "the evaluation, identification, placement, programming and services for the minor children with disabilities," and that each child's IEP met that child's needs. Id. Plaintiffs contend that it was the abuse their minor children suffered at the hands of their teachers at May Overby that gave rise to this lawsuit. Id. at 2-3.

## LEGAL STANDARD

A motion under Federal Rule of Civil Procedure 12(b)(1) challenges a federal court's subject matter jurisdiction over a cause of action. Subject matter jurisdiction is the power of a federal court "to decide the claim before it." Lightfoot v. Cendant Mortg. Corp., 137 S. Ct. 553, 562 (2017). "Federal courts are courts of limited jurisdiction." Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 377 (1994). As such, federal courts only have power to hear cases when authorized to do so by both the Constitution and federal statute. Id. "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

"In order to properly dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the complaint must be successfully challenged on its face or on the factual truthfulness of its averments." Titus v. Sullivan, 4 F.3d 590, 593 (8th Cir. 1993) (citing Osborn v. United States, 918 F.2d 724, 729 n.6 (8th Cir. 1990)). "In a facial challenge to jurisdiction, all of the factual allegations concerning jurisdiction are presumed to be true and the motion is successful if the plaintiff fails to allege an element necessary for subject matter jurisdiction." Id. In a factual challenge to jurisdiction, however, "there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." Osborn, 918 F.2d at 730. In short, "no presumptive truthfulness attaches to [plaintiff's] allegations, and the existence of disputed material facts will not preclude [the court] from evaluating . . . the merits of the jurisdictional claims." Iowa League of Cities v. EPA, 711 F.3d 844, 861 (8th Cir. 2013) (citing Osborn, 918 F.2d at 730). "Moreover, the plaintiff will have the burden of proof

5

that jurisdiction does in fact exist." Osborn, 918 F.2d at 730. "Once the evidence is submitted, the district court must decide the jurisdictional issue, not simply rule that there is or is not enough evidence to have a trial on the issue." Id.

"Jurisdictional issues, whether they involve questions of law or of fact, are for the court to decide." Id. at 729. In a factual attack on the jurisdictional allegations of the complaint, "the court may receive competent evidence such as affidavits, deposition testimony, and the like in order to determine the factual dispute." Titus, 4 F.3d at 593 (citing Land v. Dollar, 330 U.S. 731, 735 n. 4 (1947)). "The proper course is for the defendant to request an evidentiary hearing on the issue." Id. (citing Osborn, 918 F.2d at 730).

In the Eighth Circuit, a failure to exhaust administrative remedies under the IDEA deprives a court of its subject matter jurisdiction. See Smith v. Rockwood R-VI Sch. Dist., 895 F.3d 566 (8th Cir. 2018); J.M. v. Francis Howell Sch. Dist., 850 F.3d 944 (8th Cir. 2017).

## DISCUSSION

It is important to note at the outset of this analysis that "the IDEA exhaustion requirement is not limited to claims formally brought under the IDEA. It also applies where a plaintiff brings a claim under the Constitution, the Americans with Disabilities Act, the Rehabilitation Act, and other federal laws protecting children with disabilities if such a claim 'seek[s] relief that is also available under' the IDEA." Nelson v. Charles City Cmty. Sch. Dist., 900 F.3d 587, 591 (8th Cir. 2018). To determine whether a complaint seeks relief that is also available under the IDEA, courts are instructed to examine a plaintiff's complaint to determine whether its "gravamen" is the denial of a FAPE. See J.M., 850 F.3d at 948 (quoting Fry v. Napoleon Cmty. Sch., 137 S. Ct. 743, 752 (2017) ("'relief that is also available under the IDEA' means 'relief for the denial of a FAPE, because that is the only 'relief' the IDEA makes 'available.'")).

6

Determining whether the gravamen of a plaintiff's complaint is a denial of a FAPE is, thus, a crucial inquiry because "the IDEA does not prevent a plaintiff from asserting claims under [statutes like the ADA or the Rehabilitation Act] even if . . . those claims allege the denial of an appropriate public education (much as an IDEA claim would)." Fry, 137 S. Ct. at 750. As such, the fact that the instant plaintiffs have invoked the U.S. Constitution, the ADA, and the Rehabilitation Act instead of the IDEA is of little consequence to the question of whether exhaustion of the IDEA's administrative remedies is required in their case. If the remedy sought is for the denial of a FAPE, then the IDEA requires exhaustion, regardless of the form of the claims brought by plaintiffs. See id. at 755 ("Section 1415(*l*) is not merely a pleading hurdle. It requires exhaustion when the gravamen of a complaint seeks redress for a school's failure to provide a FAPE, even if not phrased or framed in precisely that way."). That said, if "the remedy sought is not for the denial of a FAPE, then exhaustion of the IDEA's procedures is not required." Id. at 754. Thus, to clarify, if the gravamen of a complaint is anything other than a denial of a FAPE, it cannot be seeking a remedy also available under the IDEA.

Defendants argue that plaintiffs are essentially contesting the adequacy of the children's educational program, similar to the Eighth Circuit case, J.M. v. Francis Howell School District. In J.M., the plaintiff's allegations centered on the amount of time that the disabled student, J.M., spent "in physical restraints." J.M., 850 F.3d at 948. Plaintiff alleged that J.M was physically restrained for half of the time that he spent at school. Id. at 949. Due to the sheer amount of time that J.M. was physically restrained, plaintiff alleged that he was denied "participation in and the benefits of a public education." Id. Thus, the Court concluded that "the complaint [was] based on how the use of isolation and physical restraints failed to provide proper sufficient supportive services to permit J.M. to benefit from instruction." Id (internal quotations and ellipses omitted).

In the instant case, plaintiffs do not merely claim that the alleged abuse prevented their children from benefitting from a public education. Rather they claim separate and distinct harm arising from the alleged abuse. Additionally, while physical restraint is

7

mentioned a number of times in the complaint, there is more to plaintiffs' allegations of abuse than physical restraint of the type at issue in J.M.—such as "pushing" and "shoving," including into a pool, in one instance. Doc. 1 at 17. The fact that any abuse may have hindered these disabled children's educations is, at best, a tangential part of plaintiffs' claims, not the crux of their complaint as it was in J.M.

Further evidence that plaintiffs are not alleging a denial of a FAPE are the answers to the Supreme Court's two hypothetical questions from Fry:

> First, could the plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public facility that was not a school? Second, could an adult at the school have pressed essentially the same grievance? When the answer to those questions is yes, a complaint that does not expressly allege the denial of a FAPE is also unlikely to be truly about that subject. But when the answer is no, then the complaint probably does concern a FAPE.

Fry, 137 S. Ct. at 747. In the instant case, both questions must be answered in the affirmative. If the plaintiffs' minor children had been participating in some program at a public library, public theater, or public pool, they could certainly bring suit for being pushed, shoved or dragged by public employees. And it is beyond question that an adult who was pushed, shoved, or dragged, in a school by school officials, could bring suit under the constitution and, if said adult were disabled and believed the conduct to be related to his disability, under the ADA and the RA.

The Supreme Court also instructs that courts "may consider that a plaintiff has previously invoked the IDEA's formal procedures to handle the dispute—thus starting to exhaust the Act's remedies before switching midstream." Id. at 757. The Court found that "a plaintiff's initial choice to pursue that process may suggest that she is indeed seeking relief for the denial of a FAPE." Id. Here, both sides agree that the "administrative process was not pursued in this case." Doc. 24 at 2. Plaintiffs also make clear in their complaint that it was the alleged "two years of physical and emotional abuse" that spurred them to file this lawsuit. Id. at 3. In short, there is nothing in the history of this dispute to suggest that plaintiffs previously characterized their injuries as educational.

8

The gravamen of plaintiffs' complaint in the instant case is not a denial of a FAPE. Here, plaintiffs assert their minor children were "pushed, shoved, dragged, and forcibly confined to a closet without access to food, water or restroom breaks." Doc. 1 at 9. Issues of alleged physical and emotional abuse pervade plaintiffs' complaint. Alleged instances of conduct that plaintiffs argue was abusive are detailed for each minor child over the course of eleven pages. Id. at 7-18. Indeed, allegations of abuse, and the children's alleged trauma that resulted from it, are the most discussed factual topics in the complaint. Allegations of being pushed, shoved, or dragged have nothing to do with a student's educational program. Rather such conduct is more analogous to common law tort claims.

Defendants point out that plaintiffs have not attempted to join common law tort claims to this suit, but that does not necessarily indicate that the gravamen of their complaint is denial of a FAPE. When examining a complaint to determine whether it "seeks relief for a denial of an appropriate education" courts "should consider substance, not surface. The use (or non-use) of particular labels and terms is not what matters." Fry, 137 S. Ct. at 755. Whether plaintiffs do or do not bring specific common law tort claims is irrelevant to the question of whether the gravamen of plaintiffs' complaint is a denial of a FAPE. The substance of plaintiffs' constitutional, ADA, and RA claims are allegations analogous to common law torts. Thus, what is relevant, is that the alleged conduct complained of is analogous to common law tort claims and is not analogous to claims alleging the denial of an appropriate education.

While this lawsuit's relationship to education is unavoidable (the school being the location where much of the alleged abuse took place and the children's teacher being the primary alleged abuser), that does not necessarily mean plaintiffs are suing for a denial of a FAPE. Indeed, as the Eighth Circuit found in Moore v. Kansas City Public Schools, 828 F.3d 687 (8th Cir. 2016), the fact that a plaintiff seeks redress for injuries that occurred at school, to a student that had an IEP, does not necessarily mean plaintiffs are

seeking relief also available under the IDEA.[1] Like Moore, "[t]he [complaint] did not request any change or amendment to [the children's] IEP[s] or educational placement[s], and the [ADA and RA] claims do not rely on the IDEA or the rights it creates and protects." Moore, 828 F.3d at 692.

Finally, it is of little significance that plaintiffs are seeking money damages for their claims. While it is true that neither compensatory nor punitive damages are available under the administrative regime of the IDEA, the type of damages a plaintiff seeks will not allow them to circumvent the administrative procedures of the IDEA if the gravamen of the suit is for a denial of a FAPE. Smith, 895 F.3d at 569.

As the Court has determined that plaintiffs are not seeking relief also available under the IDEA, defendants' other arguments concerning exceptions to the exhaustion requirement of the IDEA will not be addressed.

It is hereby **ORDERED** that defendants' motions to dismiss for lack of subject matter jurisdiction, Docs. 23 and 26, are **DENIED**.

DATED this 27th day of September, 2019.

BY THE COURT:

_[signature: Charles B. Kornmann]_

CHARLES B. KORNMANN
United States District Judge

---

[1] The Eighth Circuit's discussion of claims alleging a denial of a FAPE in Moore was in the context of analyzing whether a federal question was present that would support federal jurisdiction upon the defendant's removal of the case from state court in Missouri; Moore's petition only brought state law tort claims, but defendant alleged that the "Moore's causes of action arose under the IDEA." Moore, 828 F.3d at 690-91.