UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

NORTHERN DIVISION

| | |
|---|---|
| JANE DOE and JOHN DOE, individually and on behalf their minor child, A.A.; JESSICA DOE, individually and on behalf their minor child, B.B.; JILL DOE and JEFF DOE, individually and on behalf their minor child, C.C.; JANET DOE, individually and on behalf her minor child, D.D.; and JULIE DOE, individually and on behalf of her minor child, E.E., <br><br>                  Plaintiffs, <br><br>   vs. <br><br>ABERDEEN SCHOOL DISTRICT and CARRIE WIESENBURGER, in her individual capacity, <br><br>                Defendants. | 1:18-CV-01025-CBK <br><br><br>MEMORANDUM OPINION <br>AND ORDER |

## INTRODUCTION

Three plaintiffs instituted this action allegedly on behalf of their minor children who were students with disabilities enrolled in the Aberdeen School District in Aberdeen, South Dakota, during the 2014/15 and 2015/16 school years. The action was commenced on December 21, 2018, pursuant to a complaint filed by South Dakota attorney Hilary Johnson. This is the only case she has "handled." On February 19, 2019, on motion of the plaintiffs, Minnesota attorney Margaret O'Sullivan Kane of Kane Education Law, LLC was admitted *pro hac vice*.

Plaintiffs' complaint sought damages for physical and emotional abuse allegedly suffered by the children at the hands of defendant Wiesenberger and her educational aides. Plaintiffs asserted claims under the United States Constitution, the Americans with Disabilities Act, the Rehabilitation Act, the South Dakota Human Rights Act, and a state law negligence claim. Defendants moved to dismiss for lack of subject matter

jurisdiction. I denied the motion to dismiss. Doe v. Aberdeen School District, 2019 WL 4740163 (D.S.D. Sept. 27, 2019).

The parties stipulated to the joinder of two additional parties and an amended complaint was filed. Defendants filed six motions for summary judgment, five relating to each individual plaintiff's claim and one omnibus motion claiming the school district is shielded from municipal liability under Monell v. Dep't. of Social Services, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), and the individual defendants are shielded from liability and damages on the basis of qualified immunity. I granted the individual motions for summary judgment in part, dismissing claims under the South Dakota Human Rights Act. I denied the school district's claims as to all plaintiffs that it was shielded from liability under Monell. I denied defendant Wiesenberger's claims that she was entitled to qualified immunity. I granted summary judgment to the individual defendants on plaintiffs' Fourteenth Amendment parental due process and procedural due process claims but denied summary judgment to defendant Wiesenberger on three plaintiffs' Fourth Amendment and Fourteenth Amendment substantive due process claims. I granted summary judgment to all defendants as to plaintiffs' retaliation and hostile environment claims under the Americans with Disabilities Act and the Rehabilitation Act but denied summary judgment as to plaintiffs' claims against the Aberdeen School District under the American with Disabilities Act and Rehabilitation Act for equal access to educational services. Finally, I granted summary judgment to the Aberdeen School District on plaintiffs' state law negligence claims but denied summary judgment to defendant Wiesenberger as to plaintiffs' negligence claims and denied summary judgment to the individual defendants alleged to have assaulted plaintiffs. Doe v. Aberdeen School District, 2021 WL 4268264, at *34 (D.S.D. Sept. 20, 2021).

Defendants filed an interlocutory appeal to the United States Court of Appeals for the Eighth Circuit. On appeal, the United States Court of Appeals for the Eighth Circuit limited the denial of defendant Wiesenberger's qualified immunity to four instances of conduct, finding that other conduct alleged in the complaint did not amount to an unreasonable seizure. Doe v. Aberdeen School District, 42 F.4th 883, 890-92 (8th Cir.

2

2022).  The Eighth Circuit reversed my decision denying defendant Wiesenberger qualified immunity as to plaintiffs' substantive due process claims.  Doe v. Aberdeen School District, 42 F.4th at 893-94.  Finally, based upon its determination that plaintiffs' substantive due process claims against Wiesenberger fail, the Eighth Circuit dismissed any supervisory liability claim against the Aberdeen School District.  Doe v. Aberdeen School District, 42 F.4th at 894-95.

Following remand from the Court of Appeals, on September 12, 2022, a pretrial conference was held and trial was scheduled for November 7, 2022.  The settlement deadline set by the Court was ten working days before trial – October 24, 2022.  On September 20, 2022, Ms. Kane, on behalf of plaintiffs, notified the Court by letter that plaintiffs were abandoning any Rehabilitation Act claims and clarifying that no state court assault claims were raised in the amended complaint, thus abandoning any such claims.

The parties prepared for trial, filing motions *in limine*, proposed jury instructions, and trial briefs.  On November 1, 2022, the parties jointly moved for an extension of the settlement deadline, including a confidential memorandum outlining the proposed monetary and non-monetary settlement terms.

I notified the parties that they had failed to comply with Fed. R. Civ. P. 17(c) requiring minors to be represented by a fiduciary.  The jury trial was cancelled based upon the written memorandum of settlement.  Plaintiffs moved for the appointment of the parents as guardians *ad litem* for the minor plaintiffs and that motion was granted.

On December 1, 2022, Mr. Sannes filed a motion on behalf of plaintiffs to approve the settlement, including determining the amounts of attorneys' fees owed, if any, to Ms. Kane, Ms. Johnson, and Mr. Sannes.  This matter came on for an evidentiary hearing on February 8, 2023.

## DECISION

The evidence received, together with the affidavits and exhibits filed herein, show that one of the parents originally contacted Ms. Kane, seeking her representation in this case.  A written fee agreement was entered into between Ms. Kane and the mother of

3

A.A. on June 18, 2018. Ms. Kane employed Ms. Johnson as local counsel to pursue litigation but parents were not advised of the arrangements for the payment of Ms. Johnson's attorney's fees. Ms. Johnson was thus, in a sense, an employee of Ms. Kane. Ms. Johnson had no contract with the plaintiffs or a fiduciary for the children.

The fee agreement between the mother of A.A. and Kane Education Law, LLC ("KEL") provides, in part:

> The retainer of $3,000 is due at the time Client signs this agreement. Client agrees to make a minimum monthly payment of $250.00 toward the balance beginning the first of the month following the date this agreement was signed. Attorney time will be billed at $400.00 per hour. Time will be charged in .25 increments. Administrative time [my comment being what is that?] will be billed at $150.00 per hour. If legal action is required to procure payment, the Client may also be responsible for the fees and costs associated with procuring payment. KEL reserves the right to pursue fees and costs under any fee-shifting statutes or to take 33% of any monetary damages. KEL reserves the right to take the larger of the two, based on KEL billing statements, and based on the non-monetary relief pursued. The Client is not responsible to pay the balance of the fees and costs if the Client receives an adverse decision and declines to appeal the decision.

A refund provision provides: "Once KEL begins to perform legal services, if the Client terminates KEL, KEL will as soon as practicable provide an accounting of the services provided and provide any refund due to the Client." The agreement further provided that the "Client agrees to fully cooperate with KEL's efforts to obtain fees and costs associated with the representation as a prevailing party."

I practiced law as a trial lawyer for 28 years before taking office as an Article III judge in May of 1995. The fee agreement is the most unusual attorney fee agreement I have ever seen. It appears Ms. Kane intended to charge the clients an hourly fee with monthly payments for her hourly billing and Ms. Kane did receive payments monthly. Ms. Kane also exacted a contingent fee agreement from the clients. Finally, Ms. Kane intended to seek statutory fees if that amount was greater than the amount she had already received as payment or was greater than the contingent fee. There is nothing in the record to even suggest that Ms. Kane advised any of the parents to seek independent legal advice before signing the fee agreements. Such advice is always appropriate.

4

Plaintiffs assert that no billing statements were ever received by plaintiffs from Ms. Kane and none were offered to the Court by Ms. Kane. Plaintiffs did receive bills for costs incurred and those "costs" were reimbursed by plaintiffs. The parents of A.A. claim they paid a total of $22,233.81 to Ms. Kane, of which $14,450.00 was allegedly paid for attorney's fees and $7,783.81 was paid to Ms. Kane to reimburse "costs." Ms. Kane submitted a transaction record showing that the parents of A.A. paid $16,250.00 to Ms. Kane in attorney fees. Ms. Kane submitted a transaction report claiming the parents of A.A. only paid $2,015.47 to Ms. Kane to reimburse "costs."

The mother of B.B. entered into a fee agreement with Ms. Kane on June 11, 2018. The agreement in the record is set forth in an email but is the same agreement set forth above. The mother of B.B. claims to have paid Ms. Kane a total of $31,798.29, of which $16,250.00 was allegedly paid for attorney's fees and $15,548.29 was paid to reimburse "costs." Ms. Kane submitted a transaction report claiming the mother of B.B. only paid $16,000.00 to Ms. Kane in attorney fees but paid $17,849.88 to Ms. Kane to reimburse "costs."

The parents of C.C. entered into a fee agreement with Ms. Kane on June 21, 2018. The fee agreement is the same agreement set forth above but they agreed to only pay $150.00 per month to Ms. Kane as attorney fees. Pursuant to that agreement, the parents of C.C. claim they paid to Ms. Kane $5,015.97, representing $3,000 for attorney's fees and $2,015.97 to allegedly reimburse "costs." Ms. Kane submitted a transaction record claiming the parents of C.C. only paid an initial payment of $3,075.00 and one payment of $150.00, for total payments of $3,225.00.

On February 26, 2020, I granted a motion to add D.D. and E.E. as party plaintiffs. The mother of D.D. entered into an identical fee agreement on March 1, 2019, with Ms. Kane as previously set forth. Pursuant to that agreement, the mother of D.D. claims she paid Ms. Kane $21,418.68, representing allegedly $13,750.00 for attorney's fees and $7,768.68 to reimburse "costs." Ms. Kane submitted a transaction record showing that the mother of D.D. did in fact pay $13,750.00 to Ms. Kane for attorney fees but Ms. Kane claims the mother of D.D. only paid $2,480.00 to reimburse expenses.

The mother of E.E. entered into a fee agreement with Ms. Kane (as previously set forth) on March 20, 2020. The mother of E.E. did not agree to pay an initial retainer or any monthly payments towards attorney fees. Pursuant to that agreement, the mother of E.E. claims she paid to Ms. Kane $5,853.87 to reimburse expenses but Ms. Kane claims the mother of E.E. only paid $2,015.97 to reimburse expenses.

Neither Ms. Johnson nor Ms. Kane at any time moved for the appointment of the parents as guardians, conservators, or guardians *ad litem* of the minor plaintiffs in either state or federal court. She thus did not have any valid fee agreement with the minor plaintiffs or their fiduciaries.

The parents claim they paid Ms. Kane $47,450.00 in attorney's fees. They claim they reimbursed Ms. Kane $38,969.91 for costs involved in the litigation. This is a total of $86,419.91. Ms. Kane claims the plaintiffs paid her $49,225.00 in attorney fees and only reimbursed Ms. Kane $24,361.32 for costs. I accept the parents' claims as to what they paid. I do not know whether any sales taxes were collected or paid as required by South Dakota law. Failure to collect and remit sales taxes is a criminal violation in South Dakota.

In October 2018, Ms. Johnson entered into a written "contract attorney agreement form" wherein Ms. Kane and Ms. Johnson agreed Ms. Kane would pay Ms. Johnson an hourly rate of $250 per hour for time spent serving as local counsel. Ms. Johnson appeared as local counsel for plaintiffs throughout most of this litigation.

Ms. Johnson sent at least one time sheet to Ms. Kane documenting Ms. Johnson's billable hours. In February 2019, Ms. Kane indicated that Ms. Johnson's time keeping and hours "look good." Accordingly, Ms. Johnson continued to keep track of hours spent on the litigation in a similar manner. In email correspondence on February 20, 2019, Ms. Kane suggested that the fee agreement between Ms. Johnson and Ms. Kane was a percentage agreement based upon the total fees each attorney invested[1] in the litigation.

---

[1] Perhaps Ms. Kane should have instead referred to the amount of time each attorney had invested in the litigation.

6

Ms. Johnson clarified that she signed a contract wherein she was to be paid an hourly fee. In April 2019, Ms. Kane responded:

> I thought you were billing against the outcome and not expecting to be paid all the time you have put in. My apologies for getting this wrong. And I do want to make sure you are getting paid something toward the balance owed to you. Let's talk so I can understand your expectations and again I apologize if I did not get your expectations clear.

I issued a memorandum opinion and order on defendants' motions for summary judgment on September 20, 2021. Thereafter, issues between Ms. Kane and Ms. Johnson were memorialized in email correspondence between them. Ms. Johnson offered to withdraw to avoid further abuse by Ms. Kane. Ms. Kane asked Ms. Johnson to reconsider withdrawal. Ms. Kane acknowledged that "we could not have gotten this far without you" and "I cannot recall any aspect of this case in which you were not involved." Ms. Kane stated that there "has always been a misunderstanding between us regarding fees." However, Ms. Kane agreed that Ms. Johnson's expectation was to be paid and Ms. Kane vowed to begin making payments to Ms. Johnson for her attorney's fees. There is no record of any payment to Ms. Johnson.

My order granting in part and denying in part the defendants' motions for summary judgment went up to the Eighth Circuit on interlocutory appeal in October 2021. At some time in early 2022, Ms. Johnson submitted to Ms. Kane an itemized bill for 690 hours of work performed between October 23, 2018, and September 22, 2021. At a fee of 250 per hour, Ms. Johnson's total fee would be $172,500.00.

On January 7, 2022, Ms. Johnson sent an email to Ms. Kane memorializing Ms. Johnson's understanding that Ms. Kane did not want Ms. Johnson's assistance during the appeal. In that email, Ms. Johnson inquired what Ms. Kane's understanding was of their fee arrangement. Ms. Kane responded by email that it was Ms. Kane's understanding that Ms. Johnson would be billing hourly at $250 per hour for her work as local counsel. In that email, Ms. Kane expressed a desire to replace Ms. Johnson as local counsel and replace her with an experienced Minnesota attorney who was licensed in South Dakota. Ms. Johnson agreed to withdraw so that other local counsel could appear and Ms.

7

Johnson inquired about payment for her fees.  Ms. Johnson memorialized that it was also
her understanding that Ms. Johnson had a contract with Ms. Kane to be paid an hourly
fee of $250.  Ms. Johnson inquired why Ms. Kane had requested Ms. Johnson to reduce
her hours or wait to be paid when the litigation was complete.  Ms. Kane responded to the
request for payment, reiterating that Ms. Johnson would not be paid until the end of the
litigation and that Ms. Johnson's fees were subject to reduction at the termination of
litigation.  Ms. Kane stated in a January 7, 2022, email to Ms. Johnson:

> Assuming we prevail, your billing statement will be submitted to the Court
> along with mine and any other attorney through a petition for payment.
> Your billing statement will also be part of settlement discussions – should
> there be any.

Ms. Johnson responded that she "did not agree to do this case for free or on
contingencies" and inquired when she could expect to receive payment of her hourly
contract fees.  On February 21, 2022, Ms. Kane advised Ms. Johnson that they would
move to substitute counsel when the appeal was complete.  Ms. Kane described Ms.
Johnson as "an independent contractor to my office" and suggested that Ms. Johnson was
not being professional in her billing because she was not willing to review and reduce her
billing statements.  Ms. Kane stated in that email:

> Your billing statements are costs to the clients whether I am the flow-
> through and responsible party as lead counsel or not.  At the time this case
> is resolved, whether through trial or settlement, your fees will be part of the
> costs.  Both fees and costs can be reduced either in settlement or in a
> petition.

This representation by Ms. Kane was false as the "clients" had no liability for the person
employed by Ms. Kane.

Ms. Johnson had requested from Ms. Kane the opportunity to speak with the
clients to satisfy her obligation under D.S.D. LR 83 to obtain the clients' consents for her
withdrawal.  In late April 2022, Ms. Kane told Ms. Johnson she was welcome to meet
with the clients to discuss withdrawal and that South Dakota attorney Tom Sannes would
be substituted as local counsel in June.  Ms. Johnson voiced her objection to withdrawing
in favor of another local attorney, stating that she agreed to withdraw in favor of a

8

Minnesota attorney experienced in this type of litigation. Ms. Johnson stated her desire to remain as local counsel through the end of the litigation. In response, Ms. Kane told Ms. Johnson "do not schedule any more meetings with the clients."

In July 2022, in email correspondence, Ms. Kane denied that she and Ms. Johnson had a written contract but acknowledged that they agreed Ms. Johnson would be paid $250 per hour for her work as local counsel. Ms. Johnson demanded payment in July 2022, following her removal as local counsel.

In July 2022, Ms. Johnson filed a motion to withdraw as counsel for plaintiffs and plaintiffs consented to the substitution of attorney Sannes as local counsel. I granted that motion. As set forth above, the Eighth Circuit reversed in part my order on summary judgment and remanded the case in September 2022. A pretrial conference was held and trial was set for November 7, 2022.

As the parties prepared for trial, a further breakdown in the attorney-client relationship occurred between Ms. Kane and the parents. On October 14, 2022, Ms. Kane invited defendants to engage in settlement negotiations. Defendants emailed a settlement offer of $150,000.00 to which plaintiffs did not respond, at Ms. Kane's direction. A Zoom call between Ms. Kane and the parents occurred on October 22, 2022, which ended when Ms. Kane hung up on her clients. Such conduct is highly unprofessional. Ms. Kane sent an email to one and perhaps more parents expressing that her patience "has run out." In response, the father of A.A. replied on October 27, 2022:

> What patience are you talking about? The patience where you "ridicule, degradate (sic) and attack someone on the zoom meeting or hanging up on them? I have tolerated your piss poor behavior, thinking there was a method to your madness, there is not. . . . Do you always treat your clients this way? . . . This is unacceptable. . . if you're going to treat us like this and demonstrate this behavior in a courtroom, then take the settlement offer . . . .

Ms. Kane responded that "I . . . assume you will be looking for more professional legal counsel." In response, the mother of A.A. advised Ms. Kane that "We never requested a change in legal representation. We just want to be treated with respect and move forward."

The following day, on October 28, 2022, Ms. Kane forwarded part of the email chain between Ms. Kane and the parents the previous day to Mr. Sannes to make him aware of the conflict between Kane and the parents. She stated:

> My concern at this point is that the concerns with my professionalism impairs the Plaintiffs' right to representation in this case. I will be contacting colleagues and the MN board of ethics for advisory opinions on the status of my representation. My recommendation is that we reschedule the trial and permit the Plaintiffs to find counsel they have confidence in.

The same day, the mother of B.B. sent an email to Ms. Kane with a copy to the other parents representing that the parents were all in agreement that a settlement offer should be proposed, setting forth the proposed monetary and non-monetary provisions requested. Ms. Kane responded to the parents advising that, given "the current conflict, it may be best to have Tom Sannes make the offer. My fees are approximately $850,000.00." She made no mention of Ms. Johnson or her claimed fees.

One of A.A.'s parents forwarded the October 28, 2022, email chain to Mr. Sannes. Mr. Sannes, at the request of the parents and, thereafter, with the concurrence of Ms. Kane, engaged in settlement negotiations with the defendants. The defendants ultimately upped their monetary offer to $300,000 which offer, along with various significant non-monetary provisions, the parents wanted to accept. Ms. Kane was of the opinion that the monetary provisions were not sufficient to afford her an adequate attorney's fee for the work she had done during the nearly four years she appeared as counsel of record. She indicated to Mr. Sannes that her fees exceeded $850,000.00 and if plaintiffs chose to accept the defendants' offer, "they had bought themselves a lawsuit" for the remainder of her fees. Ms. Kane further objected that a settlement would not allow her to obtain statutory attorney's fees and that a trial verdict or consent decree would be required to afford her the option of seeking statutory fees. One can only imagine the chaos created on the eve of trial. One person described it as a "dumpster fire."

On October 31, 2022, Ms. Kane sent an email to the parents advising:

> It is evident to me that my skills as an attorney are insufficient to bring this case to a successful conclusion. The enormity of this case is far too great for me to bear alone. It is too much to manage for a single attorney while also having to deal

10

> with complaints about my personality. The truth is that my personality, which had been found offensive, will likely impair your right to a jury trial. My recommendation at this juncture is to request a continuance to find more reputable and able counsel to ensure your claims are not polluted with my personality.

Ms. Kane, at that point, clearly intended to abandon her clients. She had no basis of any kind to speculate that I would grant any continuance of this long pending case.

Notwithstanding her intention not to see this case through trial, Ms. Kane continued to interfere with settlement solely to protect the amount of her recovery for attorney's fees. On November 1, 2022, Ms. Kane sent an email to Mr. Sannes stating:

> In speaking with the Board of Ethics, it is clear that I may not stop the settlement from going forward. You and the clients may go forward with settlement. However, I have a binding contract with the clients and accordingly I am entitled to reasonable attorney's fees and costs, which are significant. The terms of the contract requires my clients to work to preserve my fees and costs through a petition with the Court. As I stated, if the settlement terms are agreed upon without a consent decree from the parties, the clients' right to collect fees and costs will be lost. The responsibility for those fees and costs will shift to the client.
>
> If the clients decide to settle this matter for the amount that does not cover a reasonable amount of attorneys' fees and costs, I will be bringing claims against the clients for the fees and costs up to the date my services were terminated.

As set forth above, Ms. Kane filed a notice of withdrawal on November 1, 2022, and moved to withdraw the following day. In her motion, Ms. Kane alleged:

> The attorney-client relationship has broken down, to wit, the clients are unwilling to meet with counsel or engage in further trial preparation, settlement negotiations by local counsel were undertaken without the knowledge or participation of lead counsel, and the clients, through local counsel and communications, have stated that they have lost all confidence in my representation and have challenged by (sic) professionalism and ethics. Further, the clients have refused to heed the information, advice, and instruction by Counsel. This has resulted in an adversarial position between counsel, local counsel and the clients rendering further representation untenable. Consequently, under the direction of local counsel and the clients, I request that the Court grant my motion to withdrawal (sic).

On November 2, 2022, Ms. Kane filed a notice of withdrawal and a motion to withdraw as counsel of record for plaintiffs. In support of her motion, Ms. Kane cited that the clients "have refused to heed the information, advice, and instruction by Counsel" which has "resulted in an adversarial position between counsel, local counsel and the clients." Ms. Kane indicated that the request to withdraw was "under the direction of local counsel and the clients." I granted the motion to withdraw without approving or endorsing any claims of Ms. Kane. It is now clear that the advice of counsel which the parents declined to heed was the advice not to settle for less than 2.5 million to protect Ms. Kane's desire to receive attorney's fees of $850,000.00. Ms. Kane was attempting to obtain a consent decree which would have almost guaranteed an award for legal fees. The record is clear that, under no circumstances, would defendants have agreed to a consent decree.

Thereafter, on November 11, 2022, Ms. Kane sent a letter to Mr. Sannes setting forth that "33% [of the settlement amount] for four years of successful representation was not an acceptable devaluation of the work accomplished in this case." Ms. Kane again pointed out that the clients were contractually bound to cooperate with her right to elect statutory fees. In other words, Ms. Kane was positing her opinion that the parents had no right to settle the case. Ms. Kane requested that Mr. Sannes "provide this officer with your clients' intent pertaining to the resolution of the fees and costs in this matter and hold in trust the settlement proceeds until a resolution has been reached."

On November 25, 2022, Ms. Kane advised Mr. Sannes by letter that she would not be challenging the lack of payment of fees and costs in excess of the percentage payment identified in the retainer agreements, 33% (apparently while keeping all money paid to her previously).

Following the filing of Ms. Johnson's declaration setting forth her claim for attorney's fees and service of such declaration upon Ms. Kane, Ms. Kane sent a letter to me dated December 22, 2022, wherein she notified me that she "sent Mr. Sannes a Rule 11 notice requesting that he withdraw his *ex parte* motion due to, *inter alia*, the lack of jurisdiction and denial of due process." Ms. Kane asserted in that letter that the portion of the motion to approve settlement asking this Court to determine attorneys' fees was

"*ex parte*."  Ms. Kane asserted that this Court has no jurisdiction to adjudicate fees and that, pursuant to written fee agreements, the proper jurisdiction to adjudicate fees is arbitration.  She asserted, without citation to authority, that the "plaintiffs' motion to adjudicate the merits of an *ex parte* pleading is procedurally flawed and legally unsound."

Ms. Kane sent a letter to Mr. Sannes on January 16, 2022, setting forth that she is now entitled to proceed to arbitrate the parents' fee agreements with her but that she would be willing to settle the fee matter for 1/3 of the monetary settlement reached with defendants, with no deduction for fees she already received from the parents.  In essence, she was seeking half of the settlement proceeds since the settlement terms provided for reimbursement to the parents for the fees and expenses already paid.

Following my order setting this matter for hearing, Ms. Kane sent me a letter dated January 26, 2023, disputing the amounts paid by the parents to her for attorney's fees and costs.  Ms. Kane, contrary to her December 22, 2022, letter, now asserted that I had the authority to determine that the settlement and distribution set forth in the motion to approve settlement, "including the 33% payment of fees and taxes, is fair and reasonable for the minor children."  Ms. Kane asserted, however, that deductions to be taken from the 33% fee and the amount due to Ms. Johnson are contract issues not before the Court.  She continued to assert that this "Court lacks jurisdiction and the procedurally (sic) irregularities represent a denial of due process of law."

**I. Settlement.**

Pursuant to Fed. R. Civ. P. 17(c)(2), a minor who is not otherwise represented by a fiduciary may sue only by a next friend or guardian *ad litem*.  "The court must appoint a guardian *ad litem* – or issue another appropriate order – to protect a minor or incompetent person who is unrepresented in an action."  South Dakota Rule of Civil Procedure 15-6-17(c) is substantially similar to the federal rule.  Beermann v. Beermann, 1997 S.D. 11, ¶ 9, 559 NW2d 868, 870 and M. S. v. Wermers, 557 F.2d 170, 174 (8th Cir. 1977).  Pursuant to SDCL 26-1-3, a guardian or conservator must be appointed for a minor to enforce his or her rights by civil action.  Any licensed attorney should be familiar with these requirements.

SDCL 15-6-17(c) provides that the "guardian ad litem may with the approval of the court settle or compromise in behalf of his ward, the case in which he is appearing and any judgment entered therein." "Where a guardian *ad litem* has been appointed, the court stands in a position of *parens patriae* and must act in the best interests of the minor." Matter of Guardianship of Petrik, 1996 S.D. 24, ¶ 15, 544 NW2d 388, 391. I intend to act in the best interests of the minors in this case, whose interests are paramount to the interests of the parents or attorneys.

"A strong public policy favors agreements, and courts should approach them with a presumption in their favor." Little Rock Sch. Dist. v. Pulaski Cnty. Special Sch. Dist. No. 1, 921 F.2d 1371, 1388 (8th Cir. 1990). The settlement in this case was requested by the parents whose primary interest was in ensuring that the Aberdeen School District maintained policies in force to protect severely disabled students from further abuse in the classroom. They achieved that result. The plaintiffs had no expert witness. The children were largely non-verbal. This case would have been very difficult to try and to obtain a favorable verdict.

Based on the evidence submitted and the testimony presented at the hearing, the Court finds the guardians *ad litem* should exercise their authority to execute the settlement agreement on behalf of their minor children. I find that the terms and conditions of the settlement are reasonable and in the best interests of the minors and, in fact, hopefully protect other children from harm in the future.

## II. Attorneys' Fees.

Ms. Kane has asserted that this Court has no jurisdiction or authority to interfere in her claim against the settlement proceeds or the parents for her attorney's fees. She is mistaken. She repeatedly argued during the evidentiary hearing that she no longer had any "standing." I ruled again and again that she did have "standing" but she continued to argue with the rulings of the Court. "The agreement to a contingent fee contract by a parent or next friend on behalf of a minor is not necessarily binding on the minor, whose interests are subject to the protection of the court." Dean v. Holiday Inns, Inc., 860 F.2d 670, 673 (6th Cir. 1988). Ms. Kane at no time sought to have the parents appointed as

guardians, conservators, or guardians *ad litem* to authorize parents to enter into attorney fee contracts or to undertake litigation. She should have.

This Court bears the responsibility to supervise attorneys admitted to practice (whether directly or *pro hac vice*) before the bar of the District of South Dakota and "has the inherent power to inquire into the amount charged by an attorney in order to protect a client from excessive fees." Cofffelt v. Shell, 577 F.2d 30, 32 (8th Cir. 1978).[2]

> The interest of an attorney seeking to be awarded a fee from the settlement proceeds effectuated for a minor must always, by the nature of the relationship and the dependency of the minor, be in tension. When a court is called upon to approve the settlement as is in the best interest of the minor, it must consider and then determine what constitutes fair and reasonable compensation to the attorney regardless of any agreement specifying an amount, whether contingent or otherwise.

Dean v. Holiday Inns, Inc., 860 F.2d at 673. "A federal court may wield its inherent powers over the lawyers who practice before it. This control derives from a lawyer's role as an officer of the court." Sahyers v. Prugh, Holliday & Karatinos, P.L., 560 F.3d 1241, 1244 (11th Cir. 2009), (*citing* Theard v. United States, 354 U.S. 278, 281, 77 S. Ct. 1274, 1276, 1 L. Ed. 2d 1342 (1957)).

Ms. Kane's entitlement to fees in this case, if at all, are guided by the principles set forth by the Minnesota Supreme Court. "Minnesota courts have traditionally applied six factors to determine the reasonable value of legal services:

> (1) time and labor required;
> (2) nature and difficulty of the responsibility assumed;
> (3) amount involved and the results obtained;
> (4) fees customarily charged for similar legal services;
> (5) experience, reputation, and ability of counsel; and
> (6) fee arrangement existing between counsel and client.
> (7) contributions of others; and
> (8) the timing of the termination.

Napoli Shkolnik PLLC v. Toyota Motor Corp., 955 F.3d at 749. Ms. Kane's rather significant misconduct in this case is relevant to determining her entitlement to attorney's

---

[2] The cited case originally involved a criminal representation.

fees. *Id.* But for the last-minute actions by Mr. Sannes, there would have been no settlement and the plaintiffs and the children would have been "hung out to dry."

I have already expressed my concern that Ms. Kane did not seek to have guardians *ad litem* appointed for the minor plaintiffs before entering into a fee agreement with the parents. I also have concerns about the so-called fee agreements Ms. Kane entered into with the parents. The fee agreements are in violation of the rules of ethics.

> The Minnesota Supreme Court has specified that the attorney-client relationship differs from other contractual relationships, and thus different legal principles are applied when interpreting and enforcing attorney-fee agreements. *In re Petition for Distrib. of Attorney's Fees Between Stowman Law Firm, P.A. & Lori Peterson Law Firm,* 870 N.W.2d 755, 760 (Minn. 2015). The attorney-client relationship, even if documented by a written agreement, is subject to ethical and professional court rules, and ordinary contract principles must yield to these ethical standards. *Id.*

Padden L. Firm, PLLC v. Toyota Motor Corp., 956 F.3d 1069, 1073 (8th Cir. 2020).

Attorney fees are either fixed or contingent. ABA Model Rules of Professional Conduct, Rule 1.5(a)((8). Ms. Kane is attempting to recover both hourly fees and contingent fees. She required up-front payments of $3,000.00 each and monthly payments towards her hourly fees although she never provided the parents with any billing statements. She sought to recover both the hourly fees and the payments she received thereon as well as a 33% contingent fee from the monetary proceeds of the settlement (demanding her contingent fee without reduction for amounts already received) thus reducing the amount available for the five minor plaintiffs to below 2/3 of the monetary settlement amount). In essence, she was demanding 50% of the monetary settlement amount. The parents are entitled to be reimbursed for the amounts they paid for Ms. Kane's attorney fees and "costs," whatever they are.

An attorney who enters into a contingent fee contract with a client bears the risk that the litigation will not be successful. In this case, Ms. Kane alleviated that risk by purporting to also charge the parents hourly fees, leaving to Ms. Kane whether to seek a higher contingent or statutory fee if the litigation turned out to be successful. However, in charging up-front $3,000.00 payments, an hourly rate, and demanding immediate

16

payments towards her fees, Ms. Kane shifted the risk to the parents that the litigation may be unsuccessful and Ms. Kane thereby abandoned any right to request higher fees.

Ms. Kane's conduct in threatening a lawsuit over fees if the clients agreed to defendants' settlement offer was unacceptable conduct. "A lawyer shall abide by a client's decision whether to settle a matter." Minnesota Rule of Profession Conduct 1.2(a). "It is all too frequently the case that the only obstacle standing in the way of a settlement between a plaintiff and a defendant is the plaintiff's lawyer and his unreasonable demand for fees. . . . Thus, the parties are held hostage and this Court is left feeling that it has become a party to an extortion." Spegon v. Cath. Bishop of Chicago, 989 F. Supp. 984, 987 (N.D. Ill. 1998), aff'd, 175 F.3d 544 (7th Cir. 1999).

> In Minnesota, a client may terminate an attorney working on a contingency-fee basis at any time, and the attorney cannot recover the contingent fee under the terms of the contract if she is fired before the contingency occurs. But a contingent-fee attorney does not necessarily "walk away empty-handed." Rather, the dismissed attorney is "entitled to compensation for the reasonable value of the services under the equitable theory of quantum meruit."

Napoli Shkolnik PLLC v. Toyota Motor Corp., 955 F.3d 745, 749 (8th Cir. 2020) (internal citations omitted). The parents did not terminate Ms. Kane. Ms. Kane quit one week before trial. This, of course, is outrageous treatment of the clients and children. Given counsel's actions, the parents were left with no alternative but to seek a settlement with defendants. Had I known what was going on, I probably would not have granted the motion to withdraw. I had confidence in Mr. Sannes as a very capable trial lawyer.

I also have concerns about the terms under which Ms. Kane claims to have employed Ms. Johnson. Ms. Johnson was under the impression at all times that Ms. Kane employed Ms. Johnson on an hourly basis. When Ms. Johnson requested payment for services already expended, Ms. Kane insisted that Ms. Johnson's fees were to be paid proportionally to Ms. Kane's fees – if they were successful on behalf of the clients. When pressed again for payment, Ms. Kane waffled between admitting that Ms. Johnson was entitled to hourly fees and denying that Ms. Johnson was entitled to be paid until the litigation ended.

17

Any claim by Ms. Kane that the agreement with Ms. Johnson was a fee splitting agreement where Ms. Johnson was entitled only to a proportion of the eventual recovery is in violation of the rules of professional conduct. Minnesota Rule of Professional conduct 1.5(e) provides:

> e) A division of a fee between lawyers who are not in the same firm may be made only if
>> (1) the division is in proportion to the services performed by each lawyer or each lawyer assumes joint responsibility for the representation;
>> (2) the client agrees to the arrangement, including the share each lawyer will receive, and the agreement is confirmed in writing; and
>> (3) the total fee is reasonable.

Ms. Kane has denied that she entered into any written fee agreement with Ms. Johnson. This is false. Ms. Kane's claim that Ms. Johnson is entitled only to be paid a proportion of the proceeds from trial or settlement is unethical.

Ms. Kane's entitlement to any fees from the proceeds of the settlement is suspect in any event given her conduct in this case. It is apparent from statements of Mr. Sannes, which statements I accept as true as Mr. Sannes is an officer of the Court, that Ms. Kane declined to tell the parents about the defendants' settlement offer and directed Mr. Sannes to not tell the parents because the offer did not afford Ms. Kane the $850,000.00 attorney's fee to which she claims she is entitled to reap in this action.

Ms. Kane's conduct throughout this litigation has been mostly unprofessional. The email exchanges between Ms. Kane and counsel for defendants, which are part of the summary judgment record, show that Ms. Kane disregarded her obligation to treat opposing counsel with collegiality and civility. This conduct harms the clients. It makes a possible settlement difficult if not impossible. The email correspondence between Ms. Kane and the parents shows similar misconduct in mistreating the parents. At the hearing, some of the parents, along with Ms. Johnson, testified to the demeaning conduct of Ms. Kane towards the parents and local counsel throughout the litigation.

I also find that Ms. Kane was, in her own words, not up to the task of this litigation. Rule 1.1(4) of the South Dakota Rules of Profession Conduct provides "a

18

lawyer should provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness, and preparation reasonably necessary for the representation." Rule 1.1(6) of the Minnesota rules provides, in part, that a lawyer "should not accept representation in a matter unless it can be performed competently, promptly . . . and to conclusion." Attorney Kane failed to comply with these requirements. The last-minute withdrawal would have constituted complete abandonment of the minor plaintiffs but for the last-minute efforts of Mr. Sannes.

Ms. Kane did not assist plaintiffs in exhausting the children's administrative remedies under the Individuals with Disabilities Education Act and thus abandoned any such claim. The claims for assaults carried very likely the best means to achieve a monetary award. I was astounded when Ms. Kane gave up any such claims, largely as a result of failing to seek to recover on such basis in the complaint and amended complaint. Giving up such claims was contrary to the best interests of the children. Ms. Kane failed to allege common law torts, including assaults upon the children. While the gravamen of the complaints was the various assaults the children endured while in school, plaintiff asserted those assaults only as a basis for relief under the Constitution, Americans with Disabilities Act, and Rehabilitation Act. These were serious errors.

Mr. Sannes was substituted as local counsel for Ms. Johnson while this matter was on interlocutory appeal. He participated in the preparation and filing of pretrial materials. He was involved and made aware of the difficulties the clients and Ms. Kane were having as trial approached. Mr. Sannes, knowing that I would almost certainly not grant a continuance of the trial in this case, moved forward with the parents' request to negotiate a settlement and did negotiate a settlement with which the parents are happy and which is fair and reasonable to the children.

Ms. Kane at no time billed the parents for her fees yet exacted payment from them monthly. She has not set forth any basis for her claim that she is entitled to be compensated at $400.00 per hour for her time nor has she set forth any claim as to the number of hours she reasonably worked in this case. Other than what she alleged as to the claims of Ms. Johnson, she has not claimed any costs other than what the parents

19

already reimbursed to her. I find that Ms. Kane has already been paid attorney's fees and "costs" in the amount of $86,419.91 and that is all to which she is entitled. I find that the parents are entitled to be reimbursed from the proceeds of the settlement for the amounts expended to pay Ms. Kane and the balance of the recovery should be distributed through appropriate trust documents.

Ms. Kane is to be commended in some respects. She obviously did a good job on the appeal. She took on a case where local counsel would hesitate to "extend their necks." Her misconduct overcomes these very commendable efforts on her behalf.

Ms. Johnson claims she had a written fee agreement with Ms. Kane but did not produce such fee agreement. Nonetheless, Ms. Kane admitted that Ms. Johnson was entitled to bill her time at $250.00 per hour and Ms. Johnson has provided her billing statement. Parents request that the Court determine the amount to be paid to Ms. Johnson and Ms. Kane. I decline to inject the Court into what is a claim for breach of contract. Ms. Kane contends that I have no jurisdiction as to such matters and I agree with that as to Ms. Johnson. I feel compassion for Ms. Johnson who has been badly mistreated but, unfortunately, there is nothing I can do to help her.

The parents also request that Mr. Sannes be paid his attorney fees in this matter. I find payment of Mr. Sannes fees and costs is reasonable. His activities in this case resulted in a settlement with the defendants that is reasonable and just. Mr. Sannes has filed a statement showing that his fees, costs, and sales tax are $29,368.90. I find the hours expended and the $250 hourly rate are reasonable and such fees should be paid to Mr. Sannes from the settlement proceeds plus $5,000 to cover extra work to conclude this matter.

Ms. Kane has repeatedly asserted, since she abandoned the litigation, that this Court has no jurisdiction to adjudicate attorneys' fees. She has filed a formal motion to stay any proceedings concerning the settlement pending arbitration. Ms. Kane is not a party to this action. She, through her own wrongful conduct, is not counsel of record in this action. Her claim arises out of fee contracts which I find were entered into in violation of the rules of ethics applicable to attorneys. Her claim arises, if at all, out of

contracts with persons who were not authorized to enter into attorney fee contracts on behalf of the minor plaintiffs. Such contracts do not bind the minor children. Any claim that she is entitled to a stay should be rejected.

## ORDER

Based upon the foregoing

IT IS ORDERED:

1. The motion, Doc. 204, to approve settlement is granted.

2. Defendants and their insurer are authorized to pay the monetary settlement sum of $300,000 into the trust account of Attorney Thomas Sannes.

3. Settlement proceeds shall be distributed as set forth previously in this order.

4. The guardians *ad litem* are authorized to sign Full and Final Settlement and Release Agreements releasing any and all claims that were or could have been brought by or on behalf of the minor plaintiffs or their parents.

5. The motion, Doc. 223, to stay proceedings or defer to an arbitration forum is denied.

DATED this 31st day of March, 2023.

BY THE COURT:

CHARLES B. KORNMANN
United States District Judge

21